**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| Skatteforvaltningen,<br><br>           Plaintiff,<br><br>     vs.<br><br>Fresh Pond Investment LLC, 2321 Capital LLC, LBM DME Holdings LLC, LBM Family Trust, Gabrielle McGee, *in her capacity as trustee to the LBM Family Trust and as beneficiary or joint account holder of the JPMorgan Chase Bank, N.A. account ending in -7885*, Kim Heneghan, Mark Talucci, and Steve Feldman, *in their capacity as trustees to the LBM Family Trust*, and Luke Beneville McGee, *in his capacity as trustee to the LBM Family Trust and in his capacity as trustee or joint account holder of the JPMorgan Chase Bank, N.A. account ending in -7885*,<br><br>           Defendants. | Civil Action No.<br><br><br><br><br>**COMPLAINT** |

Plaintiff Skatteforvaltningen ("SKAT"), by its undersigned counsel, alleges as follows against Defendants Fresh Pond Investment LLC ("Fresh Pond"), 2321 Capital LLC ("2321 Capital"), LBM DME Holdings LLC ("LBM DME Holdings"), LBM Family Trust, Gabrielle McGee, in her capacity as trustee to the LBM Family Trust and as beneficiary or joint account holder of the JPMorgan Chase Bank, N.A. account ending in -7885 (the "Trust Account"), Kim Heneghan ("Heneghan"), Mark Talucci ("Talucci"), and Steve Feldman ("Feldman"), in their capacity as trustees to the LBM Family Trust, and Luke Beneville McGee ("McGee"), in his capacity as trustee to the LBM Family Trust and in his capacity as trustee or joint account holder of the Trust Account:

1.      McGee is a judgment debtor who owes SKAT approximately $164 million for

breaching a settlement agreement that resolved SKAT's civil claims against him.  To shield his assets from SKAT, McGee has funneled tens of millions of dollars into and among Defendants Fresh Pond, 2321 Capital, LBM DME Holdings and the LBM Family Trust, among other entities.  SKAT brings this action pursuant to Florida Statutes § 726.105(1)(a) to recover McGee's fraudulently transferred assets and to enforce its approximately $164 million judgment.

2.      Between 2012 and 2015, McGee and his co-conspirators, Matthew Stein ("Stein") and Jerome Lhote ("Lhote"), perpetrated a sophisticated dividend withholding tax refund fraud against the Danish government, lining their pockets with tens of millions of dollars of fraudulent proceeds.  In or about August 2015, McGee learned that SKAT was investigating the fraud and subsequently learned of a parallel criminal investigation by the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK").  After the scheme unraveled, McGee postured as if he would repay the stolen funds in order to avoid a publicly filed civil lawsuit accusing him of wrongdoing and in the hope that it would forestall criminal prosecution in Denmark.  In May 2019, McGee, Stein and Lhote executed a settlement agreement with SKAT (the "Settlement Agreement") and committed to repay their net proceeds of the fraud.  That promise proved hollow once Danish prosecutors charged and indicted McGee, Stein and Lhote in April 2021.

3.      Two years later, in March 2023, Stein and Lhote sued SKAT in the United States District Court for the Southern District of New York (the "SDNY Action"), seeking to evade their remaining obligations to SKAT under the Settlement Agreement.  SKAT asserted counterclaims against Stein and Lhote, to which it joined McGee, alleging that they breached the Settlement Agreement and seeking to recover approximately $164 million owed to SKAT thereunder.

4. On September 22, 2025, following a bench trial, the court in the SDNY Action found in SKAT's favor on all counts and held McGee, Stein and Lhote jointly and severally liable for approximately DKK 1 billion. On October 9, 2025, the Clerk of Court entered judgment in SKAT's favor in the amount of approximately $164 million (the "Judgment").

5. On February 5, 2026, SKAT registered the Judgment in the United States District Court for the Southern District of Florida.

6. It is now evident that McGee never intended to fully satisfy his obligation to SKAT under the Settlement Agreement. Instead, after learning of the Danish government's civil and criminal investigations into the fraud, McGee began surreptitiously sheltering his assets in an effort to render himself judgment-proof and to frustrate SKAT's ability to recover the amounts that McGee owes.

7. To conceal his assets and purportedly place them beyond SKAT's reach, McGee used his various limited liability companies—including Defendants Fresh Pond, 2321 Capital and LBM DME Holdings—as well as trusts, including Defendant LBM Family Trust and non-party 470 Ocean Boulevard Trust (the "470 Trust"). For example, through the 470 Trust, McGee transferred approximately $30 million into an oceanfront property in Palm Beach, Florida (the "Palm Beach Mansion"), seeking to improperly exploit Florida's homestead exemption. McGee admits that he moved to Florida, in part, because of the State's favorable asset protection laws and his payment obligation to SKAT under the Settlement Agreement.

8. SKAT's investigation to date shows that, apart from the tens of millions of dollars in ill-gotten proceeds that McGee and his co-conspirators obtained through their fraud on the Danish government, McGee's wealth largely derives from AdaptHealth Corp., a home medical equipment business that he helped take public. In 2014—while defrauding SKAT—McGee also

began serving as an officer of QMES LLC, which later changed its name to AdaptHealth LLC. AdaptHealth LLC was a wholly owned subsidiary of AdaptHealth Holdings, LLC.

9. In November 2019, McGee took the company public when AdaptHealth Holdings, LLC and other entities merged with DFB Healthcare Acquisitions Corp., a special purpose acquisition company that changed its name to AdaptHealth Corp. and began trading publicly. As a result of the merger, McGee became the Chief Executive Officer and a Director of AdaptHealth Corp. and received substantial compensation. Based on his role in taking AdaptHealth Corp. public and serving as its Chief Executive Officer, McGee acquired at least $150 million in cash and AdaptHealth Corp. shares and warrants—much of which McGee funneled into Defendants.

10. In or around 2016, as pressure mounted from SKAT's civil investigation and SØIK's criminal investigation into the fraud, McGee—fully aware of the potential liability he faced—began creating entities, including Defendants Fresh Pond, LBM DME Holdings and the LBM Family Trust to use for the improper purpose of shielding his assets from SKAT. McGee then directly or indirectly transferred into those entities cash and his equity interests in AdaptHealth Corp.'s predecessor entities that ultimately converted into AdaptHealth Corp. shares.

11. The ultimate beneficiary of those transfers is Gabrielle McGee, McGee's wife, who, before the transfers, did not own a single share of AdaptHealth Corp. or any interest in its predecessor entities. As a result of the transfers, McGee's wealth now sits with his wife, ostensibly beyond SKAT's reach.

12. In total, McGee transferred to Defendants cash and AdaptHealth Corp. shares worth at least $150 million. Defendants subsequently transferred those assets—or the proceeds

from their sale—among themselves and to other entities or individuals not yet known to SKAT.

13. Defendants—entities that McGee owns, controls or established for himself and his family—knew of McGee's wrongful intent in transferring, or causing the transfer of, his assets to and among Defendants and other entities or individuals not yet known to SKAT.

**PARTIES**

14. Plaintiff Skatteforvaltningen is an agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Hannemanns Allé 25, DK-2300 Copenhagen, Denmark.

15. Defendant Fresh Pond Investment LLC is a Delaware limited liability company formed on April 25, 2017. Fresh Pond is owned by the LBM Family Trust and is controlled by, and is the alter ego of, McGee. McGee is, or at the time of the initial transfers at issue was, a managing member and authorized signatory of Fresh Pond. Fresh Pond maintains bank accounts in Florida, some of which, upon information and belief, Fresh Pond used to engage in certain transfers giving rise to this action.

16. Defendant 2321 Capital LLC is a Delaware limited liability company formed on February 8, 2013. McGee is the sole owner of 2321 Capital and used it to sponsor a pension plan in furtherance of his fraud on SKAT. 2321 Capital is the alter ego of McGee. Upon information and belief, 2321 Capital maintains a bank account in Florida, which 2321 Capital used to engage in certain transfers giving rise to this action.

17. Defendant LBM DME Holdings LLC is a Delaware limited liability company formed on April 20, 2018. LBM DME Holdings is owned by the LBM Family Trust and is controlled by, and is the alter ego of, McGee. Upon information and belief, LBM DME Holdings maintains a bank account in Florida, which LBM DME Holdings used to engage in certain transfers giving rise to this action.

18.     Defendant LBM Family Trust is an irrevocable trust settled by McGee on July 28, 2016.  McGee is an investment trustee of the LBM Family Trust and has the power to manage and dispose of trust assets.  The LBM Family Trust is the alter ego of McGee.

19.     Defendant Gabrielle McGee, McGee's wife, is an investment trustee and beneficiary of the LBM Family Trust and, upon information and belief, a beneficiary or joint holder of the Trust Account, and a citizen of the United States and the State of Florida.

20.     Defendant Kim Heneghan is a trustee of the LBM Family Trust and, upon information and belief, a citizen of the United States and the State of New York.

21.     Defendant Mark Talucci is a trustee of the LBM Family Trust and, upon information and belief, a citizen of the United States and the State of California.

22.     Defendant Steve Feldman is a trustee of the LBM Family Trust and, upon information and belief, a citizen of the United States and the State of New Jersey.

23.     Defendant Luke Beneville McGee is a citizen of the United States and the State of Florida.  McGee is an investment trustee of the LBM Family Trust and, upon information and belief, a trustee or joint holder of the Trust Account.

### JURISDICTION AND VENUE

24.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(4) because the amount in controversy exceeds $75,000, exclusive of interest or costs, and it is between a political subdivision of a foreign state, as plaintiff, and citizens of U.S. states, as defendants.

25.     The Court has personal jurisdiction over Defendant Fresh Pond because it is controlled by, and the alter ego of, McGee, a citizen of Florida.  Fresh Pond also has purposefully availed itself of the State of Florida by maintaining bank accounts in Florida, some of which, upon information and belief, were used to conduct transfers giving rise to this action.

Additionally, Fresh Pond is owned by the LBM Family Trust, whose investment trustees—McGee and his wife Gabrielle McGee—are citizens of Florida.

26. The Court has personal jurisdiction over Defendant 2321 Capital because it is owned, controlled by, and the alter ego of, McGee, a citizen of Florida. Upon information and belief, 2321 Capital also has purposefully availed itself of the State of Florida by maintaining one or more bank accounts in Florida which were used to conduct transfers giving rise to this action.

27. The Court has personal jurisdiction over Defendant LBE DME Holdings because it is controlled by, and the alter ego of, McGee, a citizen of Florida. Upon information and belief, LBE DME Holdings also has purposefully availed itself of the State of Florida by maintaining one or more bank accounts in Florida which were used to conduct transfers giving rise to this action. Additionally, LBM DME Holdings is owned by the LBM Family Trust, whose investment trustees—McGee and his wife Gabrielle McGee—are citizens of Florida.

28. The Court has personal jurisdiction over Defendant LBM Family Trust because it is controlled by, and the alter ego of, McGee. McGee is also an investment trustee of the LBM Family Trust and a citizen of Florida, from where McGee manages LBM Family Trust assets. Additionally, Gabrielle McGee is an investment trustee and beneficiary of the LBM Family Trust and a citizen of Florida. Upon information and belief, the LBM Family Trust also maintains one or more bank accounts in Florida which were used to conduct transfers giving rise to this action.

29. The Court has personal jurisdiction over Defendant Gabrielle McGee because she is a citizen of Florida.

30. The Court has personal jurisdiction over Kim Heneghan because she has purposefully availed herself to the State of Florida through her actions as trustee to the LBM

Family Trust.

31. The Court has personal jurisdiction over Mark Talucci because he has purposefully availed himself to the State of Florida through his actions as trustee to the LBM Family Trust.

32. The Court has personal jurisdiction over Steve Feldman because he has purposefully availed himself to the State of Florida through his actions as trustee to the LBM Family Trust.

33. The Court has personal jurisdiction over Defendant Luke Beneville McGee because he is a citizen of Florida.

34. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to SKAT's claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

**McGee's fraud on SKAT**

35. From 2012 to 2015, McGee, Stein and Lhote engaged in a massive fraud on SKAT that involved U.S. pension plans submitting claims for refunds of taxes supposedly withheld at source from dividends that Danish companies issued to their shareholders.

36. Between 2012 and 2013, Stein and Lhote used Solo Capital Partners—a brokerage owned by Sanjay Shah—as the purported custodian for their pension plans. Solo Capital generated "dividend credit advices" falsely representing that the plans owned Danish shares, received dividends on those shares, and suffered withholding taxes on the dividends. The pension plans submitted those dividend credit advices to SKAT to support their fraudulent tax refund claims.

37. In late 2013 or early 2014, Stein and Lhote split from the Solo Capital scheme

-8-

and, along with McGee, acquired North Channel Bank in Germany, which they used as purported custodian for their pension plans to generate additional false dividend credit advices to submit to SKAT.

38.     From 2014 through August 2015, they used a new, larger group of pension plans to submit the false tax refund claims to SKAT.

39.     Over the course of the fraud, McGee and his co-conspirators defrauded SKAT of approximately DKK 2.9 billion (approximately $457 million at the current exchange rate) in purported refunds for taxes never paid or owed.

**McGee learns of investigations into the fraud
and enters the Settlement Agreement with SKAT**

40.     In summer 2015, the U.K. government alerted SKAT to the fraud, prompting SKAT to halt all dividend withholding tax refund payments.

41.     In August 2015, McGee learned from news reports that SKAT was investigating the fraud, and subsequently learned about a parallel criminal investigation by SØIK.

42.     By 2017, aware of those civil and criminal investigations, McGee, Stein and Lhote approached SKAT to negotiate a settlement.  Discussions continued through the end of 2018 and early 2019, at which point SKAT made clear that, despite McGee's, Stein's and Lhote's request, it would not condition a settlement on immunity from potential criminal charges in Denmark.

43.     On May 28, 2019, McGee, Stein, Lhote and others executed the Settlement Agreement, resolving SKAT's civil claims against them regarding the fraud.

44.     Under the Settlement Agreement, McGee, Stein and Lhote agreed jointly and severally to repay SKAT the "net proceeds" received from SKAT's payment of their fraudulent refund applications.  The Settlement Agreement established a preliminary settlement amount of

DKK 1.55 billion, subject to increase if the net proceeds were, in fact, more than that amount.

45.     McGee, Stein, Lhote and other settling parties paid DKK 950 million of the preliminary settlement amount.  McGee, Stein and Lhote were required to pay the remaining DKK 600 million, plus a true-up amount, by May 28, 2023.

**McGee and his co-conspirators are indicted in Denmark**

46.     In September 2019, North Channel Bank (owned by McGee, Stein and Lhote), pled guilty in Denmark to serious criminal fraud for its role in creating the false dividend credit advices.

47.     McGee, aware since 2017 of SØIK's criminal investigation into the fraud, was preliminarily charged in June 2020 and indicted in April 2021.  Stein and Lhote were indicted along with McGee in April 2021.  Stein, Lhote and McGee's criminal trial was due to commence in Denmark on June 2, 2026.  On information and belief, McGee failed to appear for trial despite agreeing to do so, and an international warrant was issued for his arrest.

**McGee's acquisition of AdaptHealth shares**

48.     In or around 2014—while defrauding SKAT—McGee began serving as an officer for QMES LLC, a home medical equipment business.  Ultimately, QMES LLC changed its name to AdaptHealth LLC.  AdaptHealth LLC was a wholly owned subsidiary of AdaptHealth Holdings, LLC.

49.     In November 2019, McGee took the company public—AdaptHealth Holdings, LLC, along with other entities, merged with DFB Healthcare Acquisitions Corp., a special purpose acquisition company that changed its name to AdaptHealth Corp., which then began trading as a public company.

50.     As a result of the merger, McGee became the Chief Executive Officer and a

Director of AdaptHealth Corp. and received substantial compensation.  Based on his role in taking AdaptHealth Corp. public and serving as its Chief Executive Officer, McGee acquired millions of dollars in compensation, much of which, upon information and belief, he directed be paid to Fresh Pond, 2321 Capital and LBM DME Holdings.

51.    By the time he took AdaptHealth public in November 2019, McGee faced potential civil and criminal exposure for defrauding SKAT.  Yet, despite SEC regulations requiring disclosure, McGee did not disclose to investors his massive fraud or SKAT's and SØIK's investigations into McGee.[1]

52.    McGee's indictment forced AdaptHealth Corp.'s hand—on April 13, 2021, AdaptHealth Corp. announced that it had put McGee on unpaid leave after learning that authorities in Denmark formally charged him with alleged tax fraud arising from certain past private activity.

53.    McGee ultimately resigned from his position at AdaptHealth Corp.

**McGee breaches the Settlement
Agreement and is found liable following trial**

54.    As noted above, McGee, Stein and Lhote's remaining payment obligation under the Settlement Agreement was due by May 28, 2023.

55.    On March 24, 2023, instead of meeting their obligation to SKAT, Stein and Lhote commenced the SDNY Action.  SKAT asserted counterclaims against Stein and Lhote, to which it joined McGee, alleging that they breached the Settlement Agreement and seeking to recover over DKK 1 billion owed to SKAT thereunder.

56.    On September 22, 2025, following a bench trial, the court in the SDNY Action

---

1.   SKAT contends that McGee obtained his AdaptHealth Corp. shares as a result of fraud or egregious conduct.

found in favor of SKAT on all counts and held that judgment should be entered for SKAT on its breach of contract counterclaims against McGee, Stein and Lhote, jointly and severally, in the amount of approximately DKK 1 billion.

57. On October 9, 2025, the Clerk of Court entered the Judgment in SKAT's favor in the amount of approximately $164 million.

**Transfers into and among McGee entities and accounts**

58. Beginning in or around 2015—after McGee's fraud on SKAT unraveled—and continuing through at least 2021, McGee directly or indirectly transferred cash and his equity interests in AdaptHealth Corp. and its predecessor entities, including QMES LLC and AdaptHealth LLC, to 2321 Capital, Fresh Pond, LBM DME Holdings, the LBM Family Trust and the Trust Account. Those transfers, totaling at least $150 million, were made to hinder SKAT's ability to recover those assets. Defendants 2321 Capital, Fresh Pond, LBM DME Holdings, the LBM Family Trust and the Trust Account—each controlled by McGee and functioning as his alter egos and mere instrumentalities—were aware of McGee's wrongful intent when they received those transfers. McGee exercises domination and control over Defendants 2321 Capital, Fresh Pond, LBM DME Holdings, the LBM Family Trust and the Trust Account to the point that they no longer have legal or independent significance of their own. Defendants 2321 Capital, Fresh Pond, LBM DME Holdings, the LBM Family Trust and the Trust Account are a sham and exist for no other purpose than as vehicles to fraudulently convey assets away from McGee to defraud his creditors.

*Transfers into Fresh Pond*

59. After forming Fresh Pond on April 25, 2017, McGee directly or indirectly transferred to Fresh Pond: (i) cash and his equity interests in the predecessor entities to

AdaptHealth Corp., including QMES LLC and AdaptHealth LLC, which interests were ultimately converted to shares of AdaptHealth Corp., and (ii) upon information and belief, a portion of his compensation from serving as Chief Executive Officer and a Director of AdaptHealth Corp. (collectively, the "Fresh Pond Initial Transfers").

60.     Between June 2021 and September 2022, Fresh Pond transferred among its own accounts AdaptHealth Corp. shares worth approximately $53 million that Fresh Pond had received from McGee.  Fresh Pond could only have received those shares, directly or indirectly, from McGee.

61.     On July 23, 2021, McGee transferred AdaptHealth Corp. shares worth $4,024,347.20 from his personal account to Fresh Pond (the "McGee Personal Account Fresh Pond Transfer").

62.     On August 16, 2021, McGee transferred AdaptHealth Corp. shares worth $15,398,560 from 2321 Capital to Fresh Pond (the "Subsequent Fresh Pond Transfer").

63.     As set forth below, Fresh Pond subsequently transferred to 2321 Capital and the LBM Family Trust a portion of the approximately $72.4 million in AdaptHealth Corp. shares— or proceeds of those shares—described above.  Upon information and belief, Fresh Pond continues to hold the remainder of those shares.

64.     On or about April 15, 2022, McGee caused 2321 Capital to transfer to Fresh Pond its interest in a Tax Receivable Agreement dated November 8, 2019 (the "Tax Receivable Agreement Transfer").  Upon information and belief, 2321 Capital did not receive fair market value in exchange for the Tax Receivable Transfer.

*Transfers into 2321 Capital*

65.     McGee also directly or indirectly transferred to his wholly owned LLC, 2321

Capital:  (i) cash and his equity interests in the predecessor entities to AdaptHealth Corp., including QMES LLC and AdaptHealth LLC, which interests were ultimately converted to shares of AdaptHealth Corp., and (ii) a portion of his compensation from serving as Chief Executive Officer and a Director of AdaptHealth Corp. (collectively, the "2321 Capital Initial Transfers"), the value of which transfers amounted to approximately $57 million.

66.     On August 16, 2021, 2321 Capital engaged in the Subsequent Fresh Pond Transfer, in which 2321 Capital transferred to Fresh Pond $15,398,560 worth of AdaptHealth Corp. shares.  Also on August 16, 2021, Fresh Pond transferred to 2321 Capital cash in the amount of $15,671,740.00 (the "Subsequent 2321 Capital Transfer").  McGee used the proceeds of the Subsequent 2321 Capital Transfer to purchase the Palm Beach Mansion.

*Transfers into LBM DME Holdings*

67.     McGee also directly or indirectly transferred (i) cash and his equity interests in the predecessor entities to AdaptHealth Corp., including QMES LLC and AdaptHealth LLC, to LBM DME Holdings, which interests were ultimately converted to AdaptHealth Corp. shares, and (ii) upon information and belief, a portion of his compensation from serving as Chief Executive Officer and a Director of AdaptHealth Corp. (collectively, the "LBM DME Holdings Initial Transfers").

68.     Between July 1, 2021 and August 15, 2022, LBM DME Holdings transferred among its own accounts AdaptHealth Corp. shares worth approximately $33 million.  LBM DME Holdings could only have received those shares, directly or indirectly, from McGee.

69.     As set forth below, LBM DME Holdings subsequently transferred to the LBM Family Trust a portion of the proceeds of the approximately $33 million in AdaptHealth Corp. shares described above.  Upon information and belief, LBM DME Holdings continues to hold

the remainder of those shares.

*Transfers into LBM Family Trust*

70.    Between December 2022 and June 2024, McGee transferred, or caused to be transferred, approximately $9.5 million in cash and AdaptHealth Corp. shares to the LBM Family Trust from McGee's personal account, Fresh Pond and LBM DME Holdings, as follows.

71.    On December 30, 2022, McGee transferred AdaptHealth Corp. shares worth $954,273 from his personal account to the LBM Family Trust (the "McGee Personal Account LBM Family Trust Transfer").

72.    On June 24 and 25, 2024, LBM DME Holdings and Fresh Pond transferred a total of $8,494,874.77 in cash to the LBM Family Trust (the "Subsequent LBM Family Trust Transfers").  Specifically, on June 24, 2024, LBM DME Holdings transferred $4,255,709.71 and Fresh Pond transferred $3,440,987.49, and on June 25, 2024, Fresh Pond transferred an additional $798,177.57.  Each of those transfers consisted of proceeds from the sale of AdaptHealth Corp. shares that McGee had previously transferred to LBM DME Holdings or Fresh Pond.

*Transfers into the Trust Account*

73.    The Trust Account is an account held at JPMorgan Chase Bank, N.A. that McGee either maintains in trust for his wife, Gabrielle McGee, or, alternatively, jointly holds with Gabrielle McGee.

74.    Between December 2020 and September 2025, McGee, through his wholly owned LLC, 2321 Capital, transferred to the Trust Account approximately $39 million in cash (the "Trust Account Transfers"), as follows:

a.    $10 million on December 11, 2020;

b.     $50,000 on January 13, 2021;

c.     $40,000 on January 19, 2021;

d.     $950,000 on January 21, 2021;

e.     $27,100,000 on May 13, 2021;

f.     $250,000 on May 14, 2021;

g.     $750,000 on April 18, 2022;

h.     $5,000 on May 12, 2023;

i.     $11,500 on August 19, 2024;

j.     $3,300 on October 7, 2024; and

k.     $2,282.12 on September 8, 2025.

## CAUSES OF ACTION

## COUNT I

### (Actual Fraudulent Transfer – Fla. Stat. § 726.105(1)(a))
### (Against Fresh Pond)

75.     SKAT repeats and realleges paragraphs 1 through 74 as if fully set forth herein.

76.     By virtue of the Judgment and, prior to that, SKAT's claim against McGee under the Settlement Agreement, and, prior to that, SKAT's claim against McGee arising from his fraud, SKAT, at all relevant times was and is a creditor and McGee was and is a debtor.

77.     On or about April 25, 2017, McGee formed Fresh Pond, an entity that he controls or controlled at all relevant times.

78.     Beginning on or about April 25, 2017, and thereafter, McGee made or caused to be made the Initial Fresh Pond Transfers, directly or indirectly, to Fresh Pond, consisting of cash and equity interests in AdaptHealth Corp. and its predecessor entities, including QMES LLC and AdaptHealth LLC, with an aggregate value of not less than $56,966,024.38.

-16-

79.  On or about July 23, 2021, McGee made the McGee Personal Account Fresh Pond Transfer, consisting of AdaptHealth Corp. shares worth $4,024,347.20, to Fresh Pond.

80.  On or about August 16, 2021, McGee made or caused to be made the Subsequent Fresh Pond Transfer, consisting of AdaptHealth Corp. shares valued at $15,398,560, from 2321 Capital to Fresh Pond.

81.  On or about April 15, 2022, McGee made or caused to be made the Tax Receivable Agreement Transfer from 2321 Capital to Fresh Pond.  Upon information and belief, 2321 Capital did not receive fair market value in exchange for the Tax Receivable Transfer.

82.  McGee made, or caused to be made, each of the Initial Fresh Pond Transfers, the McGee Personal Account Fresh Pond Transfer, the Subsequent Fresh Pond Transfer, and the Tax Receivable Agreement Transfer with actual intent to hinder, delay or defraud SKAT.

83.  Fresh Pond was a transferee and subsequent transferee of the foregoing transfers and accepted them with knowledge of McGee's fraudulent intent or in bad faith, and with knowledge of facts and circumstances that would have led a reasonable transferee to inquire further.

84.  Each of the Initial Fresh Pond Transfers, the McGee Personal Account Fresh Pond Transfer, the Subsequent Fresh Pond Transfer, and the Tax Receivable Agreement Transfer was made to an insider.  McGee founded and controls Fresh Pond and exercised dominion and control over it at all relevant times.

85.  After each of the Initial Fresh Pond Transfers, the McGee Personal Account Fresh Pond Transfer, the Subsequent Fresh Pond Transfer, and the Tax Receivable Agreement Transfer McGee retained possession, control and beneficial use of the transferred assets through Fresh Pond.

86.     McGee concealed both the existence of the transferred assets, and the Initial Fresh Pond Transfers, the McGee Personal Account Fresh Pond Transfer, the Subsequent Fresh Pond Transfer, and the Tax Receivable Agreement Transfer themselves, from SKAT, including by routing assets through entities he owned or controlled, such as 2321 Capital.

87.     At the time McGee formed Fresh Pond, and before each of the Initial Fresh Pond Transfers, the McGee Personal Account Fresh Pond Transfer, the Subsequent Fresh Pond Transfer, and the Tax Receivable Agreement Transfer, McGee was aware of his potential civil and criminal liability, had been threatened with suit by SKAT, owed SKAT substantial amounts under the Settlement Agreement, and/or faced criminal liability or had been charged and indicted in Denmark.

88.     Upon information and belief, Fresh Pond did not provide, and McGee did not receive, reasonably equivalent value in exchange for the Initial Fresh Pond Transfers, the McGee Personal Account Fresh Pond Transfer, and the Tax Receivable Agreement Transfer.

89.     The Initial Fresh Pond Transfers, the McGee Personal Account Fresh Pond Transfer, the Subsequent Fresh Pond Transfer, and the Tax Receivable Agreement Transfer occurred shortly before and after McGee incurred substantial debts to SKAT and while those debts remained outstanding.

90.     McGee absconded by relocating to Florida to take advantage of the State's favorable asset protection laws and to avoid his obligations to SKAT under the Settlement Agreement.

91.     Following the Initial Fresh Pond Transfers, the Subsequent Fresh Pond Transfer, the McGee Personal Account Fresh Pond Transfer, and the Tax Receivable Agreement Transfer, McGee failed to perform his obligations under the Settlement Agreement and sought through the

litigation in the Southern District of New York to evade liability to SKAT.

92.     By reason of the foregoing, McGee fraudulently transferred at least approximately $75,364,584.38 to Fresh Pond with actual intent to hinder, delay or defraud SKAT, which transfers qualify as actual fraudulent transfers under Florida law.

## COUNT II

### (Actual Fraudulent Transfer – Fla. Stat. § 726.105(1)(a))
### (Against 2321 Capital)

93.     SKAT repeats and realleges paragraphs 1 through 74 as if fully set forth herein.

94.     By virtue of the Judgment and, prior to that, SKAT's claim against McGee under the Settlement Agreement, and, prior to that, SKAT's claim against McGee arising from his fraud, SKAT, at all relevant times was and is a creditor and McGee was and is a debtor.

95.     On or about February 8, 2013, McGee formed 2321 Capital, which he solely owns.  McGee used 2321 Capital to sponsor a pension plan in furtherance of his fraud on SKAT.

96.     Beginning in or about 2015, and thereafter, McGee made or caused to be made the Initial 2321 Capital Transfers, directly or indirectly, to 2321 Capital, consisting of cash and equity interests in AdaptHealth Corp. and its predecessor entities, including QMES LLC and AdaptHealth LLC, with an aggregate value of not less than $57,191,226.20.

97.     On or about August 16, 2021, McGee made or caused to be made the Subsequent 2321 Capital Transfer, consisting of cash in the amount of $15,671,740.00, from Fresh Pond to 2321 Capital.

98.     McGee made, or caused to be made, each of the Initial 2321 Capital Transfers and the Subsequent 2321 Capital Transfer with actual intent to hinder, delay or defraud SKAT.

99.     2321 Capital was a transferee and subsequent transferee of the foregoing transfers and accepted them with knowledge of McGee's fraudulent intent or in bad faith, and with

knowledge of facts and circumstances that would have led a reasonable transferee to inquire further.

100. Each of the Initial 2321 Capital Transfers and the Subsequent 2321 Capital Transfer was made to an insider. McGee is the sole owner of 2321 Capital and exercised dominion and control over it at all relevant times.

101. After each of the Initial 2321 Capital Transfers and the Subsequent 2321 Capital Transfer, McGee retained possession, control and beneficial use of the transferred assets through 2321 Capital.

102. McGee concealed both the existence of the transferred assets, and the Initial 2321 Capital Transfers and the Subsequent 2321 Capital Transfer themselves, from SKAT, including by routing assets through entities he owned or controlled, such as Fresh Pond.

103. Before each of the Initial 2321 Capital Transfers and the Subsequent 2321 Capital Transfer, McGee was aware of his potential civil and criminal liability, had been threatened with suit by SKAT, owed SKAT substantial amounts under the Settlement Agreement, and/or faced criminal liability or had been charged and indicted in Denmark.

104. Upon information and belief, 2321 Capital did not provide, and McGee did not receive, reasonably equivalent value in exchange for the Initial 2321 Capital Transfers.

105. The Initial 2321 Capital Transfers and the Subsequent 2321 Capital Transfer occurred shortly before and after McGee incurred substantial debts to SKAT and while those debts remained outstanding.

106. McGee absconded by relocating to Florida to take advantage of the State's favorable asset protection laws and to avoid his obligations to SKAT under the Settlement Agreement.

107.    Following the Initial 2321 Capital Transfers and the Subsequent 2321 Capital Transfer, McGee failed to perform his obligations under the Settlement Agreement and sought through the litigation in the Southern District of New York to evade liability to SKAT.

108.    By reason of the foregoing, McGee fraudulently transferred approximately $72,524,376.76 to 2321 Capital with actual intent to hinder, delay or defraud SKAT, which transfers qualify as actual fraudulent transfers under Florida law.

## COUNT III

### (Actual Fraudulent Transfer – Fla. Stat. § 726.105(1)(a))
### (Against LBM DME Holdings)

109.    SKAT repeats and realleges paragraphs 1 through 74 as if fully set forth herein.

110.    By virtue of the Judgment and, prior to that, SKAT's claim against McGee under the Settlement Agreement, and, prior to that, SKAT's claim against McGee arising from his fraud, SKAT, at all relevant times was and is a creditor and McGee was and is a debtor.

111.    On or about April 20, 2018, McGee formed LBM DME Holdings, an entity that he controls or controlled at all relevant times.

112.    Beginning on or about April 20, 2018, and thereafter, McGee made or caused to be made the Initial LBM DME Holdings Transfers, directly or indirectly, to LBM DME Holdings, consisting of cash and equity interests in AdaptHealth Corp. and its predecessor entities, including QMES LLC and AdaptHealth LLC, with an aggregate value of no less than $33,096,292,38.

113.    McGee made, or caused to be made, each of the Initial LBM DME Holdings Transfers with actual intent to hinder, delay or defraud SKAT.

114.    LBM DME Holdings was a transferee and subsequent transferee of the foregoing transfers and accepted them with knowledge of McGee's fraudulent intent or in bad faith, and

with knowledge of facts and circumstances that would have led a reasonable transferee to inquire further.

115. Each of the Initial LBM DME Holdings Transfers was made to an insider. McGee founded and controls LBM DME Holdings and exercised dominion and control over it at all relevant times.

116. After each of the Initial LBM DME Holdings Transfers, McGee retained possession, control and beneficial use of the transferred assets through LBM DME Holdings.

117. McGee concealed both the existence of the transferred assets and the Initial LBM DME Holdings Transfers from SKAT.

118. Before each of Initial LBM DME Holdings Transfers, McGee was aware of his potential civil and criminal liability, had been threatened with suit by SKAT, owed SKAT substantial amounts under the Settlement Agreement, and/or faced criminal liability or had been charged and indicted in Denmark.

119. Upon information and belief, LBM DME Holdings did not provide, and McGee did not receive, reasonably equivalent value in exchange for the Initial LBM DME Holdings Transfers.

120. The Initial LBM DME Holdings Transfers occurred shortly before and after McGee incurred substantial debts to SKAT and while those debts remained outstanding.

121. McGee absconded by relocating to Florida to take advantage of the State's favorable asset protection laws and to avoid his obligations to SKAT under the Settlement Agreement.

122. Following the Initial LBM DME Holdings Transfers, McGee failed to perform his obligations under the Settlement Agreement and sought through the litigation in the Southern

District of New York to evade liability to SKAT.

123.   By reason of the foregoing, McGee fraudulently transferred approximately $33,096,292,38 to LBM DME Holdings with actual intent to hinder, delay or defraud SKAT, which transfers qualify as actual fraudulent transfers under Florida law.

## COUNT IV

**(Actual Fraudulent Transfer – Fla. Stat. § 726.105(1)(a))**
**(Against LBM Family Trust, McGee, Gabrielle McGee, Heneghan, Talucci, and Feldman)**

124.   SKAT repeats and realleges paragraphs 1 through 74 as if fully set forth herein.

125.   By virtue of the Judgment and, prior to that, SKAT's claim against McGee under the Settlement Agreement, and, prior to that, SKAT's claim against McGee arising from his fraud, SKAT, at all relevant times was and is a creditor and McGee was and is a debtor.

126.   On or about July 28, 2016, McGee settled the LBM Family Trust.  McGee is an investment trustee of the LBM Family Trust and his wife, Gabrielle McGee, is an investment trustee and beneficiary.  Heneghan, Talucci, and Feldman serve as trustees.

127.   On December 30, 2022, McGee made the McGee Personal Account LBM Family Trust Transfer, consisting of AdaptHealth Corp. shares worth $954,273, from his personal account to the LBM Family Trust.

128.   On June 24 and 25, 2024, LBM DME Holdings and Fresh Pond made the Subsequent LBM Family Trust Transfers, totaling $8,494,874.77 in cash, to the LBM Family Trust.

129.   McGee made, or caused to be made, each of the McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers with actual intent to hinder, delay or defraud SKAT.

130.   The LBM Family Trust was a transferee and subsequent transferee of the

foregoing transfers and accepted them with knowledge of McGee's fraudulent intent or in bad faith, and with knowledge of facts and circumstances that would have led a reasonable transferee to inquire further.

131.     Each of the McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers was made to an insider.  McGee settled the LBM Family Trust and exercised dominion and control over it at all relevant times.

132.     After each of the McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers, McGee retained possession and control of the transferred assets to the LBM Family Trust.

133.     McGee concealed both the existence of the transferred assets, the McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers from SKAT.

134.     Before each of the McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers, McGee was aware of his potential civil and criminal liability, had been threatened with suit by SKAT, owed SKAT substantial amounts under the Settlement Agreement, and/or faced criminal liability or had been charged and indicted in Denmark.

135.     Upon information and belief, the LBM Family Trust did not provide, and McGee did not receive, reasonably equivalent value in exchange for the McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers

136.     The McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers occurred after McGee incurred substantial debts to SKAT and while those debts remained outstanding.

137.    McGee absconded by relocating to Florida to take advantage of the State's favorable asset protection laws and to avoid his obligations to SKAT under the Settlement Agreement.

138.    Before and after the McGee Personal Account LBM Family Trust Transfer and the Subsequent LBM Family Trust Transfers, McGee failed to perform his obligations under the Settlement Agreement and sought through the litigation in the Southern District of New York to evade liability to SKAT.

139.    By reason of the foregoing, McGee fraudulently transferred approximately $9,449,147.77 to the LBM Family Trust with actual intent to hinder, delay or defraud SKAT, which transfers qualify as actual fraudulent transfers under Florida law.

## COUNT V

### (Actual Fraudulent Transfer – Fla. Stat. § 726.105(1)(a))
### (Against McGee and Gabrielle McGee)

140.    SKAT repeats and realleges paragraphs 1 through 74 as if fully set forth herein.

141.    By virtue of the Judgment and, prior to that, SKAT's claim against McGee under the Settlement Agreement, and, prior to that, SKAT's claim against McGee arising from his fraud, SKAT, at all relevant times was and is a creditor and McGee was and is a debtor.

142.    Between December 2020 and September 2025, McGee, through his wholly owned LLC, 2321 Capital, made to the Trust Account the Trust Account Transfers, totaling $39,162,082.12 in cash.

143.    McGee made, or caused to be made, each of the Trust Account Transfers with actual intent to hinder, delay or defraud SKAT.

144.    The Trust Account was a subsequent transferee of the foregoing transfers and McGee and Gabrielle McGee accepted them with knowledge of McGee's fraudulent intent or in

bad faith, and with knowledge of facts and circumstances that would have led a reasonable transferee to inquire further.

145.  Each of the Trust Account Transfers was made to an insider.  McGee holds, and controls, the Trust Account on behalf of his wife, Gabrielle McGee or, alternatively, McGee and Gabrielle McGee jointly hold and control the Trust Account.

146.  After each of the Trust Account Transfers, McGee retained possession and control of the transferred assets to the Trust Account.

147.  McGee concealed both the existence of the transferred assets and the Trust Account Transfers from SKAT.

148.  Before and after each of the Trust Account Transfers, McGee was aware of his potential civil and criminal liability, had been threatened with suit by SKAT, owed SKAT substantial amounts under the Settlement Agreement, and/or faced criminal liability or had been charged and indicted in Denmark.

149.  Upon information and belief, the Trust Account did not provide, and McGee did not receive, reasonably equivalent value in exchange for the Trust Account Transfers.

150.  The Trust Account Transfers occurred after McGee incurred substantial debts to SKAT and while those debts remained outstanding.

151.  McGee absconded by relocating to Florida to take advantage of the State's favorable asset protection laws and to avoid his obligations to SKAT under the Settlement Agreement.

152.  Before and after the Trust Account Transfers, McGee failed to perform his obligations under the Settlement Agreement and sought through the litigation in the Southern District of New York to evade liability to SKAT.

153.   By reason of the foregoing, McGee fraudulently transferred approximately $39,262,082.12 to the Trust Account with actual intent to hinder, delay or defraud SKAT, which transfers qualify as actual fraudulent transfers under Florida law.

## REQUEST FOR RELIEF

154.   WHEREFORE, Plaintiff SKAT requests that the Court enter judgment in its favor against Defendants as follows:

155.   For Count I:

    a.   Avoidance of the transfers of McGee's cash and equity interests in QMES LLC, AdaptHealth LLC, AdaptHealth Corp., and other entities;

    b.   An injunction against further disposition by Fresh Pond of the proceeds of McGee's transfers;

    c.   A Court order levying execution on the proceeds of McGee's transfers;

    d.   A judgment in the amount of at least $75,364,584.38, plus applicable interest.

156.   For Count II:

    a.   Avoidance of the transfers of McGee's cash and equity interests in QMES LLC, AdaptHealth LLC, AdaptHealth Corp., and other entities;

    b.   An injunction against further disposition by 2321 Capital of the proceeds of McGee's transfers;

    c.   A Court order levying execution on the proceeds of McGee's transfers;

    d.   A judgment in the amount of $72,862,966.20, plus applicable interest.

157. For Count III:

   a. Avoidance of the transfers of McGee's cash and equity interests in QMES LLC, AdaptHealth LLC, AdaptHealth Corp., and other entities;

   b. An injunction against further disposition by LBM DME Holdings of the proceeds of McGee's transfers;

   c. A Court order levying execution on the proceeds of McGee's transfers;

   d. A judgment in the amount of $33,096,292.38, plus applicable interest.

158. For Count IV:

   a. Avoidance of the transfers of McGee's cash and equity interests in QMES LLC, AdaptHealth LLC, AdaptHealth Corp., and other entities;

   b. An injunction against further disposition by LBM Family Trust of the proceeds of McGee's transfers;

   c. A Court order levying execution on the proceeds of McGee's transfers;

   d. A judgment in the amount of $9,449,147.77, plus applicable interest.

159. For Count V:

   a. Avoidance of the transfers of McGee's cash and equity interests in QMES LLC, AdaptHealth LLC, AdaptHealth Corp., and other entities;

   b. An injunction against further disposition by McGee, as trustee or joint account holder of the Trust Account, and by Gabrielle McGee, as beneficiary or joint account holder of the Trust Account, of the proceeds of McGee's transfers;

   c. A Court order levying execution on the proceeds of McGee's transfers;

   d. A judgment in the amount of $39,162,082.12, plus applicable interest.

160.    The costs of this action.

161.    All other and further relief that is just and proper.

**<u>JURY TRIAL DEMAND</u>**

SKAT demands a trial by jury on all issues so triable.

Dated: New York, New York
      June 2, 2026

Respectfully submitted,

HUGHES HUBBARD & REED LLP

/s/ Meaghan C. Gragg
Meaghan C. Gragg
Fla. Bar No. 33607
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
meaghan.gragg@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*